**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF TEXAS**
**TYLER DIVISION**

|  |  |
|---|---|
| **JEREMY LOPEZ, individually and on behalf of all persons similarly situated,** | :    **Civil Action No.: 6:16-cv-246-RWS-JDL** |
|  | : |
|  | : |
| **Plaintiff,** | :    **Collective Action Pursuant to 29 U.S.C. §** |
|  | :    **216(b)** |
| **v.** | : |
|  | : |
| **STS CONSULTING SERVICES, LLC** | : |
|  | : |
| **Defendant.** | : |
|  | : |

**PLAINTIFF'S OPPOSED MOTION FOR CONDITIONAL CERTIFICATION**
**AND TO FACILITATE NOTICE PURSUANT TO 29 U.S.C. § 216(b)**

| | |
|---|---|
| Shanon J. Carson<br>Sarah R. Schalman-Bergen<br>Alexandra K. Piazza<br>Camille Fundora<br>**BERGER & MONTAGUE, P.C.**<br>1622 Locust Street<br>Philadelphia, PA 19103<br>Telephone: (215) 875-3000<br>Facsimile: (215) 875-4604<br>scarson@bm.net<br>sschalman-bergen@bm.net<br>apiazza@bm.net<br>cfundora@bm.net | Clif Alexander<br>**ANDERSON2X, PLLC**<br>819 N. Upper Broadway<br>Corpus Christi, Texas 78401<br>Telephone: (361) 452-1279<br>Facsimile: (361) 452-1284<br>clif@a2xlaw.com |

*Attorneys-In-Charge For Plaintiff*

## TABLE OF CONTENTS

I.     INTRODUCTION AND SUMMARY OF ARGUMENT ................................................. 1

II.    PROCEDURAL HISTORY ........................................................................................ 3

III.   FACTUAL BACKGROUND ....................................................................................... 4

       A.     STS Is A Third Party Inspection Company That Employs Similarly Situated
              Inspectors ....................................................................................................... 4

       B.     All Inspectors Are Subject To A Uniform Day Rate Compensation Policy ........... 4

              1.     Inspectors Are Paid On A Day Rate Basis, Regardless of Their Job Title,
                     Project Or Geographic Location ................................................................. 4

              2.     All Inspectors Are Paid by the Number of Days Worked, Without Regard
                     to Actual Hours Worked ............................................................................ 5

       C.     All Inspectors Perform Similar Job Duties ............................................................ 7

       D.     All Inspectors Routinely Work Far In Excess of Forty Hours Per Week ............... 8

IV.    ISSUE PRESENTED .................................................................................................. 9

V.     ARGUMENT .............................................................................................................. 9

       A.     Legal Standard: The District Court Is Authorized To Issue Notice To The
              Proposed Class And Should Do So Immediately .................................................... 9

       B.     The Court Should Use The Two-Stage *Lusardi* Approach for Issuing Notice To
              Potential Collective Members ............................................................................. 10

              1.     Notice Is Appropriate On The Facts Presented Because Collective
                     Members Are Similarly Situated .............................................................. 11

              2.     Day Rate Inspector Cases Like This One Are Appropriate And Well-
                     Suited For Conditional Certification ........................................................ 14

              3.     STS' Merits Based Arguments Are Inappropriate at This Stage, and STS
                     Should Be Judicially Estopped From Arguing Otherwise In This Litigation
                     .............................................................................................................. 16

              4.     The Statute of Limitations Is Running On The Collective Members'
                     Valuable And Viable Claims ................................................................... 18

VI.    RELIEF SOUGHT ................................................................................................... 18

A.       Courts Routinely Require The Production Of Names, Addresses, E-mail
         Addresses, Phone Numbers, Dates of Employment, and Partial Social Security
         Numbers For The Notice Process ......................................................................... 20

B.       Plaintiff's Proposed Notice Is Accurate And Informative, And The Notice Plan
         Should Be Approved ............................................................................................ 20

VII.    CONCLUSION .............................................................................................................. 22

# **TABLE OF AUTHORITIES**

**Cases**                                                                                           **Page(s)**

*Adair v. Wis. Bell, Inc.*,
No. 08-C-280, 2008 WL 2690716 (E.D. Wis. July 2, 2008) ..................................................... 3, 6

*Aguirre v. SBC Commc'ns, Inc.*,
   No. H-05-3198, 2007 WL 772756 (S.D. Tex. Mar. 12, 2007) .................................. 16

*Allen v. McWane, Inc.*,
   No. 2:06-cv-158 (TJW), 2006 WL 3246531 (E.D. Tex. Nov. 7, 2006) .................................. 13

*Austin v. Onward, LLC*,
   161 F. Supp. 3d 457 (S.D. Tex. 2015) ................................................................... 16

*Beall v. Tyler Tech., Inc.*,
   No. 2:08-cv-422, 2009 WL 1766141 (E.D. Tex. June 23, 2009) ........................................... 10

*Casarotto v. Expl. Drilling, Inc.*,
   2015 WL 8780050 (D. Mont. Dec. 15, 2015)................................................................... 14, 15

*Casarotto v. Expl. Drilling, Inc.*,
   No. 15-cv-41, 2015 WL 6080755 (D. Mont. Oct 15, 2015) .................................. 14

*Dreyer v. Baker Hughes Oilfield Operations, Inc.*,
   No. H-08-1212, 2008 WL 5204149 (S.D. Tex. Dec. 11, 2008) ................................. 2

*Esparza v. C&J Energy Servs., Inc.*,
   No. 5:15-cv-850-DAE, 2016 WL 1737147 (W.D. Tex. May 2, 2016) .................................. 13

*Fenley v. Wood Grp. Mustang, Inc.*,
   No. 2:15-cv-326, -- F. Supp. 3d --, 2016 WL 1059681 (S.D. Ohio Mar. 17, 2016)....... 2, 14, 21

*Gordon v. TBC Retail Group, Inc.*,
   134 F. Supp. 3d 1027 (D. S.C. 2015).................................................................... 17

*Guillory v. PF & B Mgmt., LP*,
   No. 11-cv-4377, 2012 WL 5207590 (S.D. Tex. Sept. 14, 2012)................................. 9

*H&R Block, LTD. v. Housden & Beard*,
   186 F.R.D. 399 (E.D. Tex. 1999).......................................................................... 3

*Hayes v. Laroy Thomas, Inc.*,
   No. 5:05-cv-227, 2006 WL 1004991 (E.D. Tex. 2006).......................................... 18

*Heeg v. Adams Harris, Inc.*,
   907 F. Supp. 2d 856 (S.D. Tex. 2010) .................................................................... 2

*Heleen v. Belk, Inc*,
No. 4:16-cv-00055, 2016 WL 5118646 (E.D. Tex. Sept. 21, 2016) .................................. passim

*Hoffman-La Roche, Inc. v. Sperling*,
493 U.S. 165 (1989) ..................................................................................... 9, 10, 20

*Jones v. Cretic Energy Servs., LLC*,
149 F. Supp. 3d 761 (S.D. Tex. 2015) ............................................................. passim

*Kesley v. Entm't U.S.A. Inc.*,
67 F. Supp. 3d 1061 (D. Ariz. 2014) ...................................................................... 21

*McCloud v. McClinton Energy Grp., LLC*,
No. 7:14-cv-120, 2015 WL 737024 n. 5 (W.D. Tex. Feb. 20, 2015) ...................................... 13

*McKnight v. D. Houston, Inc.*,
756 F. Supp. 2d 794 (S.D. Tex. 2010) ...................................................................... 17

*McPherson v. Leam Drilling Sys., LLC*,
No. 4:14-cv-02361, 2015 WL 1470554 (S.D. Tex. Mar. 30, 2015) ...................... 16, 20, 21, 22

*Mims v. Carrier Corp.*,
No. 2:06-cv-206, 2008 WL 906335 (E.D. Tex. Mar. 31, 2008) ............................................. 10

*Miranda v. Mahard Egg Farm, Inc.*,
No. 4:15-cv-406, 2016 WL 1704861 (E.D. Tex. Apr. 28, 2016) .......................... 10, 11, 21, 22

*Mooney v. Aramco Servs. Co.*,
54 F.3d 1207 (5th Cir. 1995) ..................................................................... 1, 10, 11

*Morisky v. Pub. Serv. Elect. & Gas Co.*,
111 F. Supp. 2d 493 (D.N.J. 2000) ...................................................................... 16

*New Hampshire v. Maine*,
532 U.S. 742 (2001) ..................................................................................... 17, 18

*Nunez v. Orleans Shoring, LLC*,
No. 16-3005, 2016 WL 3746168 (E.D. La. July 13, 2016) ...................................... 21

*Page v. Nova Healthcare Mgmt., L.L.P.*,
No. H-12-2093, 2013 WL 4782749 (S.D. Tex. Sept. 6, 2013) ........................................ 14, 22

*Prejean v. O'Brien's Response Mgmt., Inc.*,
No. 12-cv-1045, 2013 WL 5960674 (E.D. La. Nov. 6, 2013) ................................................ 21

*Riojas v. Seal Produce, Inc.*,
82 F.R.D. 613 (S.D. Tex. 1979) ...................................................................... 11

*Riva v. Schlumberger Tech. Corp.*,
   No. 4:15-cv-3002, 2016 WL 3543306 (S.D. Tex. June 29, 2016)...................................... 11, 16

*Sandoz v. Cingular Wireless, LLC*,
   553 F.3d 913 (5th Cir. 2008) ................................................................................................ 3, 18

*Sedtal v. Genuine Parts Co.*,
   No. 1:08-cv-413, 2009 WL 2216593 (E.D. Tex. July 23, 2009) ........................................ 10, 11

*Sperling v. Hoffmann–La Roche, Inc.*,
   118 F.R.D. 392 (D.N.J. 1988)..................................................................................................... 10

*Tice v. AOC Senior Home Health Corp.*,
   826 F. Supp. 2d 990 (E.D. Tex. 2011)................................................................................. passim

*Vasallo v. Goodman Networks, Inc.*,
   No. 4:15-cv-97, 2015 WL 3793208 (E.D. Tex. June 17, 2015) ................................................ 11

*Villarreal v. St. Luke's Episcopal Hosp.*,
   751 F. Supp. 2d 902 (S.D. Tex. 2010) ..................................................................................... 13

*Wanken v. Wanken*,
   No. 3:12-cv-2107, 2013 WL 1828840 (N.D. Tex. May 1, 2013)............................................... 17

*Whitehorn v. Wolfgang's Steakhouse, Inc.*,
   767 F. Supp. 2d 445 (S.D.N.Y. 2011).................................................................................... 22

*Koviach v. Crescent City Consulting, LLC*,......................................................................................... 12

*Woods v. Vector Mktg. Corp.*,
   No. 14-cv-0264 EMC, 2015 WL 1198593 (N.D. Cal. Mar. 16, 2015).................................... 21

**Statutes & Regulations**

29 U.S.C. § 216(b) ............................................................................................................................ 1, 9

29 C.F.R. § 541.604 ..............................................................................................................................7, 16

29 C.F.R. § 541.604(b) ......................................................................................................................... 16

29 C.F.R. § 778.112 ......................................................................................................................... 2, 3

## I.     INTRODUCTION AND SUMMARY OF ARGUMENT

Plaintiff Jeremy Lopez ("Plaintiff") brought this action on behalf of himself and all similarly situated employees to recover unlawfully withheld overtime wages and related damages based on Defendant STS Consulting Services, LLC's ("Defendant" or "STS") violation of the Fair Labor Standards Act, 29 U.S.C. § 216(b), *et seq.* ("FLSA"). Plaintiff now moves to conditionally certify the following group of similarly situated employees so they may receive notice and have the opportunity to join this action:

> All current and former employees of STS Consulting Services, LLC ("STS") who held the job title of inspector or a similar title ("Inspector") in the United States in any workweek between three years prior to the date of the Court's Order and the present (the "FLSA Collective").

To date, three (3) Inspectors who worked for STS have already joined this case, and support Plaintiff challenging a common policy applicable to all Inspectors. *See* ECF Nos. 32, 35, 42 (collectively, "Opt-In Consent Forms").  Plaintiff respectfully requests that the Court authorize notice to be sent to the additional Inspectors identified in STS' records, so that they may have the opportunity to join this action and thereby toll the statute of limitations on their FLSA claim.

The standard that Plaintiff must meet under the FLSA for conditional certification is "fairly lenient" and "typically results in conditional certification of a representative class." *Jones v. Cretic Energy Servs., LLC*, 149 F. Supp. 3d 761, 767 (S.D. Tex. 2015) (citing *Mooney v. Aramco Servs. Co.*, 54 F.3d 1207, 1214 (5th Cir. 1995) *overruled on other grounds by Desert Palace, Inc. v. Costa*, 539 U.S. 90, 123 S. Ct. 2147 (2003)). At this early stage before discovery has been completed, Courts throughout this Circuit "appear to require nothing more than substantial allegations that the putative class members were together the victims of a single decision, policy or plan." *Id.*

Plaintiff easily satisfies this lenient burden. Inspectors are all paid pursuant to a uniform day rate compensation plan that violates the FLSA on its face. Specifically, STS does not pay its Inspectors any overtime pay when they work more than forty hours in a workweek. In July 2014, STS confirmed to the Texas Workforce Commission that its pay policy was to provide day rate pay to its Inspectors only for days worked. Yet, the FLSA is clear that paying employees on a day rate basis does not excuse an employer's obligation to pay overtime when those employees work more than forty hours in a workweek. *See* 29 C.F.R. § 778.112 ("If the employee is paid a flat sum for a day's work … without regard to the number of hours worked in the day … and if he receives no other form of compensation for services … [h]e is then entitled to extra half-time pay … for all hours worked in excess of 40 in the work week.").

In this case, all Inspectors are subject to this same common pay policy and practice, which is ***not limited by geography, client or project***, and which Plaintiff alleges violates the FLSA.  *See Fenley v. Wood Grp. Mustang, Inc.*, No. 2:15-cv-326, -- F. Supp. 3d --, 2016 WL 1059681, at *5 (S.D. Ohio Mar. 17, 2016) (conditionally certifying nationwide class of inspectors who were paid on a day rate basis); *Fenley v. Applied Consultants, Inc.*, No. 15-cv-259-MRH, ECF No. 65 (W.D. Pa.) (Jun. 17, 2016 Final Approval Order) (Ex. A) (finally certifying nationwide settlement class of day rate inspectors); *see also Heeg v. Adams Harris, Inc.*, 907 F. Supp. 2d 856, 863 (S.D. Tex. 2010) (geographic commonality is not necessary to meet the similarly situated requirement for a FLSA collective action; instead, the focus is on whether the employees were impacted by a common policy); *Dreyer v. Baker Hughes Oilfield Operations, Inc.*, No. H-08-1212, 2008 WL 5204149, at *3 (S.D. Tex. Dec. 11, 2008) ("the presence of a single decision, policy, or plan is often good evidence that employers are similarly situated").

Moreover, all Inspectors are similarly situated in that they all 1) are subject to the same corporate reporting structure; 2) perform inspection work in the field; and 3) are scheduled to work and routinely work more than forty (40) hours in a workweek. Plaintiff has submitted STS' timesheets and declarations from Opt-In Plaintiffs in support of this motion, which, at this early stage, is more than sufficient to satisfy the lenient standard for conditional certification. *See generally H&R Block, LTD. v. Housden & Beard*, 186 F.R.D. 399, 400 (E.D. Tex. 1999) (proof of such a single decision, policy or plan can be provided through declarations of potential plaintiffs, identification of potential plaintiffs, and/or evidence of a widespread plan). Notice should be issued on an expedited basis to promote the broad remedial purpose of the FLSA and prevent the wasting of viable claims for unpaid wages.[1] Accordingly, Plaintiff respectfully requests that the Court grant this Motion and enter the accompanying proposed Order conditionally certifying the proposed FLSA Collective of Inspectors and approving Plaintiff's plan of notice.

## II.     PROCEDURAL HISTORY

Plaintiff filed his Complaint in the United States District Court for the District of Wyoming on February 19, 2016, alleging that STS violated the FLSA by paying Plaintiff and other employees on an unlawful day rate compensation plan without paying overtime when they worked over forty hours per week. *See* Compl. ¶¶ 12-32; 29 C.F.R. § 778.112 (day rate regulation of the FLSA). On March 15, 2016, STS filed a Motion to Dismiss for Lack of Personal Jurisdiction and

---

[1] Plaintiff respectfully request expedited treatment of this motion, as prompt judicial notice will give the Inspectors the opportunity to participate in this action while they still have claims that are not time-barred. *See Sandoz v. Cingular Wireless, LLC*, 553 F.3d 913, 916-917 (5th Cir. 2008) (The FLSA specifies that the statute of limitations for opt-ins runs from the opt-in date); *see also Adair v. Wis. Bell, Inc.*, No. 08-C-280, 2008 WL 2690716, at *2 (E.D. Wis. July 2, 2008) (limiting defendant's extension to respond to plaintiff's motion for conditional certification as the "statute of limitations on the FLSA claims is three years and any delay may result in additional claims being barred."). Without prompt notice of this case, potential Opt-In Plaintiffs  are prejudiced, because for those who worked three years ago, each day that passes without their having the opportunity to join ticks another day of damages off the clock.

Improper Venue, and Alternative Motion to Transfer Venue. (ECF No. 14.) The parties subsequently agreed to transfer the action this Court. (ECF No. 17.) STS filed its Answer on April 11, 2016. (ECF No. 21.)

Between April 19, 2016 and August 11, 2016, Plaintiff and Opt-Ins responded to the Court's Interrogatories, and STS provided their paystubs and timesheets. (ECF Nos. 28-31, 40-41, 43, 45-46.)  Plaintiff now moves to conditionally certify a collective action of Inspectors for the purpose of sending notice to Collective Members, as defined above.

On August 24, 2016, the parties engaged in an in-person settlement conference in Dallas, Texas. (ECF No. 47.)  Although the parties made a good faith effort to resolve the case, a settlement was not reached.  Plaintiff filed a Notice of Readiness for Scheduling Conference on September 16, 2016. (ECF No. 49.)

III.   **FACTUAL BACKGROUND**

   A.     **STS Is A Third Party Inspection Company That Employs Similarly Situated Inspectors**

STS is a Longview, Texas-based corporation that provides inspection services to oil and gas companies throughout the United States. *See* Compl. ¶¶ 4-5. Importantly for purposes of this Motion, while Plaintiff and the Opt-In Plaintiffs worked on multiple projects for STS across three (3) states, STS still paid all of them pursuant to a uniform day rate compensation plan and policy. *See* Compl. ¶ 25; Opt-In Consent Forms. Further, Inspectors all work in the field rather than in STS' corporate or regional offices, and all test and observe the pipeline construction, welding, and coating processes to ensure compliance with client specifications and industry standards. *See* Compl. ¶¶ 7, 20-23.

   B.     **All Inspectors Are Subject To A Uniform Day Rate Compensation Policy**

        1.     **Inspectors Are Paid On A Day Rate Basis, Regardless of Their Job**

**Title, Project Or Geographic Location**

Inspectors are subject to the same pay policy, by which they are uniformly denied overtime compensation in violation of the FLSA. While the amount of the day rate may vary by project, all Inspectors are paid on a day rate, and STS is responsible for paying its Inspectors in compliance with the FLSA. *See* Comp. ¶¶ 25-26. Inspectors are all also eligible to receive a *per diem*, mileage, and equipment reimbursement. *See* Ex. B, Sample Timesheets for Plaintiff and Opt-In Plaintiffs ("Opt-In Timesheets"); Ex. C, Paystubs for Plaintiff and Opt-In Plaintiffs ("Opt-In Paystubs"); Ex. D, Tex. Wage Claim 14-15, Timesheets for Funderberg ("Funderberg Timesheets").

Moreover, the timesheets, declarations and Responses to Court's Interrogatories from the Plaintiff and Opt-In Plaintiffs demonstrate that Inspectors are paid pursuant to a day rate compensation plan regardless of their job title, geographic location, or project. Plaintiff and the Opt-In Plaintiffs performed work for STS in three (3) different states and for three (3) different pipeline clients. *See* Ex. E, Summary of Opt-In Plaintiffs.  In joining this litigation, each Opt-In Plaintiff certified that he "worked for STS Consulting Services, LLC . . . and was paid on a day rate basis." *See* Opt-In Consent Forms at ¶ 2.

In order to get paid, Inspectors must fill out an STS Timesheet, which is used for all of STS' clients, and provides spaces for the client's name and the client supervisor.  These forms are provided to all of STS' employees.

> **2.      All Inspectors Are Paid by the Number of Days Worked, Without Regard to Actual Hours Worked**

STS has a uniform pay policy, by which it pays its Inspectors a day rate for each day that they perform work. STS has produced pay letters that it sent to Plaintiff and the Opt-In Plaintiffs prior to their employment, and these documents confirm that STS paid them based on days worked.

5

Specifically, the pay letters state: "Guarantee: 6 days *work*/7 days per diem". *See* Ex. F, Opt-In Pay Letters (emphasis added). Plaintiff and Opt-In Plaintiffs report the number of days they work, without regard for the number of hours worked each day, on a timesheet provided by and returnable to STS. *See* Opt-In Timesheets; Tex. Wage Claim 14-15, Funderberg Timesheets; *see also* Opt-In Paystubs (showing "Day Rate" and "Qty" are for days actually worked each workweek). Using the timesheets STS provided to all of its Inspectors, including Plaintiff and Opt-In Plaintiffs, Inspectors were to report whether or not they worked that day, but not the actual hours worked, by marking "1" for worked or "0" for not worked. *Id.*

STS has previously confirmed to the Texas Workforce Commission that its pay policy was to pay ***only for days worked***, rather than any minimum guarantee. On March 14, 2014, another STS Inspector (and potential Opt-In Plaintiff), Jimmy R. Funderberg, filed a Wage Claim with the Texas Workforce Commission against STS for violation of the Texas Payday Law after he stopped working for STS. *See* Tex. Wage Claim 63-65. Specifically, Mr. Funderberg – like Plaintiff and Opt-In Plaintiffs – was paid a day rate. Mr. Funderberg claimed, however, that he should be owed his unpaid wages as part of an "STS guarantee" pay for days that he did not work. *Id.* at 3. Mr. Funderberg stated that "the employment agreement was 6 days guaranteed day rate." *Id.* at 3; 51. In response, STS took the position that its employment arrangement with Mr. Funderberg (and other Inspectors) was for pay for days worked only. *Id.* at 56, STS Rebuttal dated May 23, 2014 ("STS Rebuttal"). In support, STS submitted paystubs, timesheets, as well as internal emails and the very same pay letter that they provided to the Plaintiff and Opt-In Plaintiffs here. *Id.* at 10-49; 57-58 ("Guarantee: 6 days work/7 days per diem"). STS took the position with the Texas Workforce that this "Guarantee" was a guarantee for the number of days of work that would be provided, not a guarantee of pay regardless of days worked. *Id.* at 11, Email from Gary P. Perez

dated October 29, 2013 ("If the inspectors or off and do not travel home for the holidays he will received pre-diem only. The inspector that travels home does not receive per-diem or pay while they are off.").[2]   The Texas Workforce relied on STS' representations in finding against Mr. Funderberg and for STS.  Specifically, the Texas Workforce found that "*[t]he employer does not provide payment of these amounts during hours or days when work was not performed.*" Tex. Wage Claim 6, Tex. Workforce Comm'n, Prelim. Wage Determination Order (July 30, 2014) (emphasis added).

### C.    All Inspectors Perform Similar Job Duties

Despite any potential difference in specific Inspector job titles, Plaintiff, the Opt-In Plaintiffs, and all Inspectors also perform substantially similar duties. Inspectors test and observe pipeline construction, welding, and coating processes to ensure compliance with client specifications and industry standards. *See* Compl. ¶¶ 13, 18.  In performing their work, Inspectors are required to utilize the "techniques and procedures obtained primarily from industry manuals, standards and codes." Comp. ¶ 20.  Inspectors are expected to work within the closely prescribed limits provided by STS and its clients, which are detailed in each daily report. Comp. ¶ 21.

While employed with STS, Plaintiff held three (3) inspector positions: Utility, Welding, and Hydrotastic.  In all 3 positions, Plaintiff had to follow "predetermined procedures" to inspect different aspects of the pipeline and ensure its integrity. Declaration of Jeremy Lopez ("Lopez Decl.") ¶ 7, 12 (attached hereto as Exhibit G); Lopez Resp. to Ct.'s Interrogs. No. 4, ECF No. 28. Some tasks required manual labor, such as digging ditches and installations. Lopez Decl. ¶¶ 5-7.

---

[2] These admissions cause STS' pay plan to violate the FLSA's salary basis test and the minimum guarantee regulation. *See* 29 C.F.R. § 541.604; *see also* Ex. H, DOL's Fact Sheet #17G ("a "salary basis" means an employee regularly receives a predetermined amount of compensation each pay period [which] *cannot be reduced because of variations in the quality or quantity of the employee's work* .") (emphasis added).

Opt-In Plaintiffs provided their job duties and experiences were similar to that of Plaintiff's. *See* Declaration of Richard Riggins ("Riggins Decl.") ¶¶ 5-6 (attached hereto as Exhibit I); Riggins Resp. to Ct.'s Interrogs. No. 4, ECF No. 40 (worked as a Welding Inspector following predetermined procedures inspecting pipelines, which also required manual labor, such as digging ditches/trenches); Declaration of Chuck Grimes ("Grimes Decl.") ¶¶ 5-7 (attached hereto as Exhibit J); Grimes Resp. to Ct.'s Interrogs. No. 4, ECF No. 41 (worked as a Utility Inspector, Welding Inspector and Hydrotastic Inspector, and whose job duties were similar to Plaintiff); Declaration of Wayne Jenkins, Jr. ("Jenkins Decl.") ¶ 5-6 (attached hereto as Exhibit K); Jenkins Resp. to Ct.'s Interrogs. No. 4, ECF No. 45 (worked as a Special Projects Inspector, which includes working within the predetermined guidelines and manual labor similar to Plaintiff and Opt-In Plaintiffs). Plaintiff and Opt-In Plaintiffs all declare they engaged with other inspectors regularly on the job and they also have performed the same types of work and have worked similar hours for STS. Lopez Decl. ¶ 12; Riggins Decl. ¶ 11; Grimes Decl. ¶ 12; Jenkins Decl. ¶ 12. While they held varying inspector positions, their day-to-day job duties did not diverge substantially, they were all paid on a day rate basis, and they never received overtime compensation. Lopez Decl. ¶¶ 8, 11; Riggins Decl. ¶¶ 7, 10; Grimes Decl. ¶¶ 8, 11; Jenkins Decl. ¶¶ 8, 11.

### D.    All Inspectors Routinely Work Far In Excess of Forty Hours Per Week

Inspectors routinely work far in excess of 40 hours per week, and yet, STS does not properly pay them ***any*** overtime compensation. *See* Compl. ¶¶ 26-27; Lopez Decl. ¶¶ 10-11; Riggins Decl. ¶¶ 9-10; Grimes Decl. ¶¶ 10-11; Jenkins Decl. ¶¶ 10-11. Inspectors work approximately six (6) to seven (7) days per week, typically working on at least ten (10) hour shifts, up to fifteen (15) hours per day. *See* Compl. ¶ 26; Lopez Decl. ¶ 9; Lopez Resp. to Ct.'s Interrogs. No. 3; Riggins Decl. ¶ 8; Riggins Resp. to Ct.'s Interrogs. No. 3; Grimes Decl. ¶ 9; Grimes Resp. to Ct.'s Interrogs. No. 3; Jenkins Decl. ¶ 9; Jenkins Resp. to Ct.'s Interrogs. No. 3.

While it is not seriously disputed that Inspectors work over forty hours per week on a regular basis, STS' timesheets do not accurately track the number of hours that Inspectors work each day or each week. *See* Comp. ¶ 25; Opt-In Timesheets; Tex. Wage Claim 14-15, Funderberg Timesheets.

IV.   **ISSUE PRESENTED**

The issue before this Court is whether the Collective Members should be notified about the existence of this action so that they may make an informed decision about whether to join this suit and stop the statute of limitations from running on their claims for unpaid overtime compensation. The merits of Plaintiff's claims or STS' common defenses are not before the Court, and they are not appropriate inquiries for purposes of conditional certification.

V.   **ARGUMENT**

A.   **Legal Standard: The District Court Is Authorized To Issue Notice To The Proposed Class And Should Do So Immediately**

The FLSA's "collective action" provision allows one or more employees to bring an action for overtime compensation on "behalf of himself or themselves and other employees similarly situated." 29 U.S.C. §216(b). District courts have broad discretion to allow a party asserting FLSA claims on behalf of others to notify potential class members that they may choose to "opt-in" to the suit. *See Hoffman-La Roche, Inc. v. Sperling*, 493 U.S. 165, 169 (1989); *Heleen v. Belk, Inc*, No. 4:16-cv-00055, 2016 WL 5118646, at *1 (E.D. Tex. Sept. 21, 2016) (Mazzant, J.) ("Under § 216(b), district courts have the discretionary power to conditionally certify collective actions and authorize notice to potential class members.") (quoting *Tice v. AOC Senior Home Health Corp.*, 826 F. Supp. 2d 990, 994 (E.D. Tex. 2011) (Schell, J.)); *Jones*, 149 F. Supp. 3d at 766 ("When a plaintiff seeks certification to bring a collective action on behalf of others and asks the court to approve a notice to potential Plaintiff, the court has discretion to approve the collective action and

facilitate notice to potential Plaintiff."); *Guillory v. PF & B Mgmt., LP*, No. 11-cv-4377, 2012 WL

5207590, at *2 (S.D. Tex. Sept. 14, 2012) *report and recommendation adopted*, 2012 WL 5207637

(S.D. Tex. Oct. 22, 2012) ("Courts have the authority to implement the representative action

process by facilitating notice to potential Plaintiff, i.e., to persons alleged to be 'similarly situated'

to the named plaintiff(s).") (citing *Hoffman-La Roche*, 493 U.S. at 170). Court-authorized notice

protects against "misleading communications" by the parties, resolves the parties' disputes

regarding the content of any notice, prevents the proliferation of multiple individual lawsuits,

assures joinder of additional parties is accomplished properly and efficiently, and expedites

resolution of the dispute. *Hoffman-La Roche*, 493 US. at 170-172.

**B.    The Court Should Use The Two-Stage *Lusardi* Approach for Issuing Notice To Potential Collective Members**

"The *Lusardi* two-stage approach is the prevailing standard among federal courts . . . and

is the standard most frequently used by this court." *See Sedtal v. Genuine Parts Co.*, No. 1:08-cv-

413, 2009 WL 2216593 (E.D. Tex. July 23, 2009) (Heartfield, J.); *Beall v. Tyler Tech., Inc.*, No.

2:08-cv-422, 2009 WL 1766141 (E.D. Tex. June 23, 2009) (Ward, J.); *Mims v. Carrier Corp.*, No.

2:06-cv-206, 2008 WL 906335 (E.D. Tex. Mar. 31, 2008) (Ward, J.). "The *Lusardi* analysis

proceeds in two stages: (1) a notice stage, followed by (2) a decertification stage." *Tice*, 826 F.

Supp. 2d at 994-995 (citing *Mooney*, 54 F.3d at 1213-14). Courts in this District have held that at

the notice stage:

> [T]he court makes a decision, usually based solely on the pleadings and any
> affidavits that have been submitted, whether to certify the class conditionally and
> give notice to potential class members. *See Mooney*, 54 F.3d at 1213–14. The
> decision is made using a "fairly lenient standard" because the court often has
> minimal evidence at this stage of the litigation. *Id.* at 1214. Courts, in fact, "appear
> to require nothing more than substantial allegations that the putative class members
> were together the victims of a single decision, policy or plan." *Id.* & n. 8 (quoting
> *Sperling v. Hoffmann–La Roche, Inc.*, 118 F.R.D. 392, 407 (D.N.J. 1988)). Thus,
> notice stage analysis typically results in conditional certification of a representative
> class. *Id.*

*Miranda v. Mahard Egg Farm, Inc.*, No. 4:15-cv-406, 2016 WL 1704861, at *1 (E.D. Tex. Apr. 28, 2016) (Mazzant, J.). If the Court conditionally certifies the class, the "putative class members are given notice and the opportunity to 'opt-in,'" and "the action proceeds as a representative action." *Id.* (citing *Sedtal*, 2009 WL 2216593, at *3).

It is not until the second stage, after discovery is largely complete, that a defendant may move to decertify the conditionally certified class. *Sedtal*, 2009 WL 2216593 at 3. This is because, "[a]t this stage, the court has much more information on which to base its decision, and makes a factual determination on the similarly situated question." *Id.* "The scrutiny applied in the second stage is much more rigorous than that of the notice stage." *Vasallo v. Goodman Networks, Inc.*, No. 4:15-cv-97, 2015 WL 3793208, at *3 (E.D. Tex. June 17, 2015) (Clark, J.) (quoting *Mooney*, 54 F.3d at 1214).  If the court finds the claimants are no longer made up of similarly situated persons, it decertifies the class and dismisses the Opt-In Plaintiffs without prejudice. *Id.* If the class is still similarly situated, the court allows the collective action to proceed. *Id.*

### 1.    Notice Is Appropriate On The Facts Presented Because Collective Members Are Similarly Situated

At the notice stage, courts determine whether the plaintiff and potential opt-ins are "similarly situated" based upon allegations in a complaint supported by affidavits. *Tice*, 826 F. Supp. 2d at 994 (citing *Mooney*, 54 F.3d at 1213-14); *Miranda*, 2016 WL 1704861, at *1.  To be similarly situated, each class member's situation need not be identical, but merely similar. *Miranda*, 2016 WL 1704861, at *2; *Riojas v. Seal Produce, Inc.*, 82 F.R.D. 613, 616 (S.D. Tex. 1979); *see also Riva v. Schlumberger Tech. Corp.*, No. 4:15-cv-3002, 2016 WL 3543306, at *5 (S.D. Tex. June 29, 2016) ("Uniformity in every aspect of employment need not be found in order to make a determination as to whether a class of employees are 'similarly situated.'") (Hoyt, J.).

In *Riva*, the Southern District of Texas conditionally certified a class of field engineers in

the oil and gas industry "[w]here employees, with alternating duty assignments, share in a finite set of duties, [ ] are 'similarly situated.'" 2016 WL 3543306 at *5.  The Court denied defendant's argument that field engineers are not similarly situated because they worked in different locations, various project, and encompass within 23 job categories, their basic duties appear to be similar. *Id.* at 4.  The Court elaborated,

> [I]n an employment setting where the employer engages in a world-wide oil and gas industry operation, the fact that the duties of employees may vary slightly from local to local or position to position does not mean that the employees are not "similarly situated." Here, the employees work under the umbrella of the "Field Engineer" . . . where job duties may, depend upon the specific project. Therefore, an individual may perform tasks at one location that are not fully repeated at another, or exchange duties at the same location. Hence, job duty assignments are configured or arranged pursuant to the defendant's policies and project needs or demands at the time, but cannot be said to be significantly different.

*Id.* at 5.

Similarly in *Koviach v. Crescent City Consulting, LLC,* decided on the same day as Riva, the District Court for the Eastern District of Louisiana conditionally certified a class of security guards based on plaintiffs' declarations stating their awareness of others performing same duties, and working in excess of 40 hours and not being paid overtime. No. 14-2874, 2016 WL 3542306, at *4 (E.D. La. June 29, 2016). Plaintiffs supported their assertions with payroll records. *Id.  The Court was satisfied Pl*aintiffs met their lenient burden at this juncture when they alleged Defendant had a general policy to misclassify security guards as independent contractors and not pay them overtime compensation. *Id.*

*In this lawsuit, Plaintiff* has more than met the lenient standard of showing that notice to the Collective is appropriate. The evidence attached to this Motion, combined with the other pleadings on file, show that the Collective Members performed substantially similar work, were paid pursuant to the same day rate pay policy, and all worked over 40 hours per week without

overtime compensation. *See* Compl. ¶¶ 18-21; Lopez Decl. ¶¶ 8-11; Riggins Decl. ¶¶ 7-10; Grimes Decl. ¶¶ 8-11; Jenkins Decl. ¶¶ 8-11.  STS also treated all Inspectors similarly by classifying them all as exempt.  Plaintiff's and Opt-In Plaintiffs' familiarity with the job requirements, duties, and pay structures of other Collective Members comes from observing and speaking with other Inspectors and employees of STS.[3] *See* Lopez Decl. ¶ 12; Riggins Decl. ¶ 11; Grimes Decl. ¶ 12; Jenkins Decl. ¶ 12.

The District Court for the Western District Court of Texas held in *Esparza v. C&J Energy Servs., Inc.*, No. 5:15-cv-850-DAE, 2016 WL 1737147, at *4-5 (W.D. Tex. May 2, 2016) that wireline operators were similarly situated based on the three affidavits provided by the plaintiff. *Id.* at *4. The declarants asserted they were all paid pursuant to the same compensation scheme and the said pay scheme violated the FLSA. *Id.*  The affidavits further stated that while their work was transient in nature, their job functions and treatment were substantially the same. *Id.*

Consequently, for all of the reasons set forth in this Motion and the attached evidence, this Court should authorize notice to the Collective Members and allow Plaintiff to serve the proposed Notice and Consent to Join Form attached hereto as Exhibits L and M on all current and former Inspectors who worked for STS during the relevant statutory time period. Given the weight of the showing made by Plaintiff, the issuance of Court-approved notice to the Collective Members is appropriate and within this Court's discretion. *See Heleen*, 2016 WL 5118646, at *2 (conditionally certifying a class where plaintiffs established "some factual nexus which binds the named plaintiffs and potential class members together as victims of a particular alleged policy or practice.")

---

[3] *See McCloud v. McClinton Energy Grp., LLC*, No. 7:14-cv-120, 2015 WL 737024, at *4 n. 5 (W.D. Tex. Feb. 20, 2015) ("interaction with fellow employees can be sufficient to establish personal knowledge" at the first stage of certification); *Villarreal v. St. Luke's Episcopal Hosp.*, 751 F. Supp. 2d 902, 911–12 (S.D. Tex. 2010) ("day-to-day work and interaction with other employees" is sufficient to support a finding of personal knowledge at this stage in the litigation).

(quoting *Allen v. McWane, Inc.,* No. 2:06-cv-158 (TJW), 2006 WL 3246531, at *2 (E.D. Tex. Nov. 7, 2006) (Ward, J.)); *Jones*, 149 F. Supp. 3d at 775 (conditionally certifying a class where there existed a "reasonable basis for crediting plaintiff's assertion that other aggrieved individuals exist and that the other aggrieved individuals are similarly situated to plaintiff in terms of both job requirements and payment provisions"); *Page v. Nova Healthcare Mgmt., L.L.P.*, No. H-12-2093, 2013 WL 4782749, at *3 (S.D. Tex. Sept. 6, 2013) (holding conditional certification appropriate where plaintiff demonstrates that it is "reasonable to believe that other aggrieved employees, who were subject to the same unlawful policy or plan of Defendant[], exist").

### 2.     Day Rate Inspector Cases Like This One Are Appropriate And Well-Suited For Conditional Certification

Federal courts around the country routinely grant motions for conditional certification on behalf of classes of employees who are paid on a day rate and no overtime compensation system. Indeed, two recent decisions in day rate cases are of particular significance: *Fenley v. Wood Group Mustang, Inc.*, -- F. Supp. 3d --, 2016 WL 1059681 (S.D. Ohio Mar. 17, 2016), and *Casarotto v. Expl. Drilling, Inc.*, No. 15-cv-41, 2015 WL 6080755 (D. Mont. Oct 15, 2015) ("*Casarotto I*"), *report and recommendation adopted Casarotto v. Expl. Drilling, Inc.*, 2015 WL 8780050 (D. Mont. Dec. 15, 2015) ("*Casarotto II*"). For the reasons discussed herein, the Court should find these actions to be instructive and conditionally certify Plaintiff's proposed nationwide Collective.

In *Fenley*, the United States District Court for the Southern District of Ohio conditionally certified a nationwide class of pipeline inspectors whom plaintiff alleged were paid on a day rate basis. Just as Plaintiff has done here, in *Fenley*, plaintiff alleged: 1) that the defendant maintained a common day rate pay policy that was not limited by geography, client, or project; 2) that all potential collective members work within the same business unit, department, and job family; 3) that all potential collective members were subject to the same corporate reporting structure; and 4)

that all potential collective members were routinely scheduled to work – and did work – more than 40 hours per week. 2016 WL 1059681, at *3. In conditionally certifying a nationwide class, the district court held that Plaintiff Fenley's allegations, declarations, and the limited discovery showing that the inspectors were classified and paid the same way was sufficient to grant conditional certification to a nationwide class. *Id.* at *5.

Similarly, in *Casarotto I*, Magistrate Judge Ostby recommended that the United States District Court for the District of Montana conditionally certify a collective group of flowback operators whom Plaintiff Casarotto alleged "1) were employed as flowback operators by Exploration; 2) performed similar duties; 3) had primary duties of assisting in the operation and monitoring of oil wells; 4) regularly worked overtime; 5) performed the same core job functions while being treated (and paid) by Exploration in the same manner; and 6) were denied overtime pay by Exploration due to their misclassification." In adopting the Report and Recommendation and granting conditional certification, the district court held that "Casarotto has provided substantial allegations that he and other flowback operators were subjected to a policy that violated the FLSA. Casarotto alleges that he routinely was required to work over 40 hours per week without receiving any overtime pay. Casarotto also makes sufficient factual allegations to show that he was not exempt from the FLSA's overtime requirements. [...] Given the lenient standard at the first step, Casarotto met his burden of showing that he and the putative class members are similarly situated for purposes of § 216(b)." *Casarotto II*, 2015 WL 8780050, at *2.

Here, Plaintiff has presented evidence of a widespread pay plan that STS violated the FLSA, namely, the payment of a day rate without paying overtime to Inspectors, in violation of the FLSA. STS' own records demonstrate that all of its Inspectors are subject to the same written compensation policy, under which they are paid pursuant to a non-salaried day rate compensation

system that does not provide for overtime compensation for hours worked over 40 per week. *See*

Compl. ¶ 13; Lopez Decl. ¶ 8; Riggins Decl. ¶ 7; Grimes Decl. ¶ 8; Jenkins Decl. ¶ 8; Opt-In

Paystubs. The Court should conditionally certify the requested Collective here, because Plaintiff's

evidence demonstrates that all Collective Members are similarly impacted by STS' common pay

plan, regardless of any individualized inquiries.[4]

### 3.    STS' Merits Based Arguments Are Inappropriate at This Stage, and STS Should Be Judicially Estopped From Arguing Otherwise In This Litigation

In response to this Motion, STS will likely claim that its day rate pay policy meets the

salary basis test pursuant to 29 C.F.R. § 541.604 of implementing regulations of the FLSA,[5] and

will likely also argue that the U.S. Department of Labor ("DOL") recently investigated its pay

policy and found only limited violations.  These arguments fail for two reasons.

---

[4] To the extent that STS intends to assert that this case is a misclassification case and somehow inappropriate for conditional certification, STS's affirmative defenses are not a bar to conditional certification and do not create individualized or fact-intensive inquiries, especially where, as here, STS has asserted that it treated all Inspectors in the same manner. Moreover, Courts in this Circuit routinely grant conditional certification in misclassification cases. *See, e.g.*, *Riva*, 2016 WL 3543306, at *5 (conditionally certifying class of field engineers); *Jones*, 149 F. Supp. 3d at 775 (conditionally certifying class of coil tubing crew members whose specific job titles and levels differed, and holding "[e]mployees with different job titles are similarly situated for purpose of an opt-in FLSA class when their day-to-day job duties do not vary substantially.") (citing *Aguirre v. SBC Commc'ns, Inc.*, No. H-05-3198, 2007 WL 772756, at *12 (S.D. Tex. Mar. 12, 2007); *Morisky v. Pub. Serv. Elect. & Gas Co.*, 111 F. Supp. 2d 493, 498 (D.N.J. 2000) (for the purposes of a misclassification claim, "similarly situated" must be "analyzed in terms of the nature of the job duties performed by each class member, as the ultimate issue to be determined is whether each employee was properly classified as exempt")); *McPherson v. Leam Drilling Sys., LLC*, No. 4:14-cv-02361, 2015 WL 1470554, at *12-13 (S.D. Tex. Mar. 30, 2015) (conditionally certifying class of allegedly misclassified drillers and operators who worked in various locations, preformed some differing tasks, and whose job levels ranged from I to IV) (citing cases holding same).
[5] *See* 29 C.F.R. § 541.604(b) ("An exempt employee's earnings may be computed on an hourly, a daily or a shift basis, without losing the exemption or violating the salary basis requirement, if the employment arrangement also includes a guarantee of at least the minimum weekly required amount paid on a salary basis regardless of the number of hours, days or shifts worked, and a reasonable relationship exists between the guaranteed amount and the amount actually earned.")

First, as a legal matter, at this initial stage, for purposes of determining whether employees are similarly situated, a Court does not consider the merits of Plaintiffs' claim. *See Austin v. Onward, LLC*, 161 F. Supp. 3d 457, 463 (S.D. Tex. 2015) ("Neither stage of certification is an opportunity for the court to assess the merits of the claim by deciding factual disputes or making credibility determinations.") (quoting *McKnight v. D. Houston, Inc.*, 756 F. Supp. 2d 794, 802 (S.D. Tex. 2010)).[6]   In any event, even at the appropriate stage, a DOL investigation is not dispositive of an adjudication of the merits of Plaintiff's claims by this Court. *See Gordon v. TBC Retail Group, Inc.*, 134 F. Supp. 3d 1027, 1038 (D. S.C. 2015) (granting conditional certification over the employer's merits-based arguments, which included that the DOL investigated its practices and found no violations, and holding moreover, that such a determination by the DOL "is not binding on this court").

Second, as a factual matter, and as noted above, *see supra* Section III.B.2, STS has previously represented to the Texas Workforce Commission that its pay policy was to pay ***only for days worked***, rather than any minimum guarantee.  STS cannot have it both ways. Judicial estoppel precludes STS from arguing that it pays only for days worked with no minimum salary guarantee to the Texas government, and arguing that it pays a minimum guarantee to satisfy the FLSA's salary basis requirement to this Court, and potentially to the U.S. DOL. *See Wanken v. Wanken*, No. 3:12-cv-2107, 2013 WL 1828840, at *6 (N.D. Tex. May 1, 2013) ("[W]here a party assumes a certain position in a legal proceeding, and succeeds in maintaining that position, he may not thereafter, simply because his interests have changed, assume a contrary position, especially if

---

[6] *See also Bartlett, et al. v. Elite Prod. Servs., LLC*, C.A. No. 5:15-cv-00545-FB, ECF No. 21, (W.D. Tex. Feb. 9, 2016) (Primomo, M.J.) (Ex. N) (agreed order granting notice to all helpers and operators in the flowback division even though the DOL investigated and concluded that all helpers and operators were exempt). Though Plaintiff has asked STS to provide specific information regarding the scope of the DOL's investigation, STS has, to date, refused to do so.

it be to the prejudice of the party who has acquiesced in the position formerly taken by him." (citing *New Hampshire v. Maine*, 532 U.S. 742, 749 (2001)).  For example, in *Wanken*, the court judicially estopped the defendant employer from arguing that the plaintiff was exempt from the FLSA where the employer's position that the plaintiff was an executive, professional or administrator directly contradicted the statements he made at a prior FINRA hearing arguing that plaintiff was a low-level employee, and the FINRA tribunal relied on those statements in reaching its decision.  *Id.*  Similarly here, STS should be estopped from asserting that it paid any minimum guarantee when it previously represented to the Texas Workforce that it paid only for days worked, in a successful effort to deny pay to an Inspector who appears to be a potential opt-in plaintiff.

### 4. The Statute of Limitations Is Running On The Collective Members' Valuable And Viable Claims

Plaintiff and Opt-In Plaintiffs stated they each have spoken to other STS Inspectors and they showed interest in learning about recovery from STS for unpaid overtime. Lopez Decl. ¶ 13; Riggins Decl. ¶ 12; Grimes Decl. ¶ 13; Jenkins Decl. ¶ 13.  Unlike Rule 23 class actions in which the statute of limitations is tolled for all potential class members with the filing of the complaint, the statute of limitations under the FLSA is not tolled with the commencement of the action or even with an order granting conditional certification. *See Sandoz*, 553 F.3d at 916-917 (The FLSA specifies that the statute of limitations for opt-ins runs from the opt-in date); *Tice*, 826 F. Supp. 2d at 995 ("The statute of limitations continues to run as to all similarly situated employees until they opt into the collective action.") (citing *Hayes v. Laroy Thomas, Inc.*, No. 5:05-cv-227, 2006 WL 1004991, *7 (E.D. Tex. 2006)). Although the notice process does not stop the statute of limitations, it does, at a minimum, notify the putative collective class members of the case, and that the statute of limitations is running on their claims.

## VI.    RELIEF SOUGHT

Plaintiff seeks the issuance of notice to all current and former Collective Members and the disclosure of the names and contact information (including the addresses, email addresses, telephone numbers, and last four digits of the social security numbers) of all current and former Collective Members employed by STS during the relevant time period. Plaintiff seeks to notify a group of potential collective members described as follows:

> All current and former employees of STS Consulting Services, LLC ("STS") who held the job title of inspector or a similar title ("Inspector") in the United States in any workweek between three years prior to the date of the Court's Order and the present (the "FLSA Collective").

Additionally, Plaintiff seeks an Order from this Court implementing the following schedule:

| DEADLINE | SUBJECT |
|---|---|
| **10 Calendar Days From Order Approving Notice To Collective Members** | STS to disclose the names, last known addresses, e-mail address, telephone numbers, and last four digits of social security numbers of Collective Members in a usable electronic format. |
| **20 Calendar Days From Order Approving Notice To Collective Members** | Plaintiff's Counsel (or Notice Administrator) shall send by mail and email the Court approved Notice and Consent Form to all Collective Members. |
| **45 Calendar Days From Date Notice Is Mailed To Collective Members** | Plaintiff's Counsel or the Notice Administrator is authorized to send by mail and e-mail a second identical copy of the Notice and Consent Form reminding Collective Members of the deadline for submission of the Consent Forms. Plaintiff's Counsel or the Notice Administrator is authorized to call Collective Members if other methods of contact fail. |
| **90 Calendar Days From Date Notice Is Mailed To Collective Members** | Collective Members shall postmark, email, or otherwise submit their Consent Forms to Plaintiff's Counsel or the Notice |

| | |
|---|---|
| | Administrator. |

**A.   Courts Routinely Require The Production Of Names, Addresses, E-mail Addresses, Phone Numbers, Dates of Employment, and Partial Social Security Numbers For The Notice Process**

Plaintiff requests that the Court order STS to provide counsel for Plaintiff with the names, current or last known addresses, email addresses, phone numbers, dates of employment, and last four digits of the social security numbers of current and former employees fitting the description of the conditionally certified class. Courts routinely require defendants to produce the requested information and allow the issuance of notice through the requested conduits. *See Hoffmann-LaRoche*, 493 U.S. at 170 ("District Court was correct to permit discovery of the names and addresses…"); *Heleen*, 2016 WL 5118646 at *3 (ordering the production of names, addresses, email addresses, and telephone numbers); *Tice*, 826 F. Supp. 2d at 996 (ordering the defendant to produce names, job titles, addresses, telephone numbers, Social Security numbers, and email addresses); *Jones*, 149 F. Supp. 3d at 776 (holding "defendant shall provide to plaintiff's counsel contact information for potential class members that includes e-mail addresses and telephone numbers"); *McPherson*, 2015 WL 1470554, at *15-16 (ordering defendants to produce names, last known addresses, email addresses (if available), telephone numbers of conditionally certified class).

**B.   Plaintiff's Proposed Notice Is Accurate And Informative, And The Notice Plan Should Be Approved**

Plaintiff's proposed Notice and Consent to Join Form (attached as Exhibits 1 and 2) meet the criteria for accurate notice that the Supreme Court envisioned in *Hoffman-LaRoche*, 493 U.S. at 170. As required, the proposed Notice and Consent to Join ("Consent Form") are "timely, accurate, and informative," and should be approved by the Court. *See Hoffman-LaRoche*, 493 U.S. at 172.

Because of the nature of the jobs in which the Collective Members work, which require them to be away from their homes for weeks or months on end, and because many may not receive their mail, or will not receive it on a timely basis, Plaintiff requests that the Court approve a robust notice program that includes a sufficient amount of time for Collective Members to receive notice. To be timely, potential Opt-In Plaintiffs should return their signed Consent Forms to Plaintiff's counsel or the Notice Administrator postmarked, faxed, or emailed within ninety (90) days after the date on which the Notice and Consent Forms are initially mailed. Plaintiff's counsel will file the Consent Forms with the Court on an ongoing weekly basis and no later than two weeks after the end of the 90-day opt-in period.

In addition, in order to facilitate this Notice and fulfill the broad remedial purposes of the FLSA, Plaintiff requests that the Court order that Notice be provided by both mail and email, and also allow potential collective action members to execute their Consent Forms online through an electronic signature service. Plaintiff requests that a duplicate copy of the Notice be sent as a reminder forty-five (45) days after the initial mailing to those Collective Members who have not yet opted in. Plaintiff further requests that Plaintiff's Counsel or the Notice Administrator be authorized to call Collective Members if other methods of contact fail. Courts routinely approve similar notice plans to that requested here.[7]

---

[7] *See, e.g.*, *Heleen*, 2016 WL 5118646, at *3 (approving 60-day mail notice program); *Nunez v. Orleans Shoring, LLC*, No. 16-3005, 2016 WL 3746168, at *6 (E.D. La. July 13, 2016) (authorizing 90-day notice program); *Miranda*, 2016 WL 1704861, at *3-4 (authorizing 60-day mail and email notice period); *Fenley*, 2016 WL 1059681, at *6-7 (authorizing 90 day mail and email notice program); *Jones*, 149 F. Supp. 3d, at 775-777 (approving 60-day notice program that includes mailing of notice via regular mail and email, a follow up reminder notice, and allowing for submission of consent forms to plaintiff's counsel); *McPherson*, 2015 WL 1470554, at *16 (approving notice plan that included a 60-day notice period, mailing of the notice via email and regular mail, sending of a reminder notice, ordering defendants to post a copy of the notice at the office trailers and job sites for 30 days following the Court's order, and restricting defendants' communications with potential class members); *Woods v. Vector Mktg. Corp.*, No. 14-cv-0264

In addition, Plaintiff requests that STS be required to post a copy of the Notice in appropriate, conspicuous, visible and accessible places at each of its offices, shops, trailers, or other locations in which Collective Members currently work during the 90-day notice period. *See Heleen*, 2016 WL 5118646, at *3 (requiring to post notice at defendant's facility throughout the 60-day notice period); *Miranda*, 2016 WL 1704861 at *3 (requiring defendant to post the notice and consent forms in a conspicuous place at the facility); *Jones*, 149 F. Supp. 3d at 776 (requiring defendant to post notice at work sites); *McPherson*, 2015 WL 1470554, at *16 (ordering defendants to post copy of notice for thirty days following the Court's order); *see also Whitehorn v. Wolfgang's Steakhouse, Inc.*, 767 F. Supp. 2d 445, 449 (S.D.N.Y. 2011) ("Courts routinely approve requests to post notice on employee bulletin boards and in other common areas, even where potential members will also be notified by mail").

Plaintiff's proposed notice plan is designed to ensure that all potential opt-in plaintiffs are made aware that they have the opportunity to join this lawsuit and toll the statute of limitations on their claims, and should be approved.

## VII.   CONCLUSION

Plaintiff has more than met the minimal burden to show that other similarly situated individuals exist and are interested in asserting their claims. In order to facilitate the purposes of the FLSA's collective action provisions, Plaintiff respectfully requests that the Court grant his

---

EMC, 2015 WL 1198593, at *5 (N.D. Cal. Mar. 16, 2015) (authorizing use of an official case website, online opt-in form submission, email notice, publication on Facebook, and an email or postcard reminder notice); *Kesley v. Entm't U.S.A. Inc.*, 67 F. Supp. 3d 1061 (D. Ariz. 2014) (authorizing use of an electronic signature service, and reminder notice); *Prejean v. O'Brien's Response Mgmt., Inc.*, No. 12-cv-1045, 2013 WL 5960674, at *10 (E.D. La. Nov. 6, 2013) (holding "notice by both e-mail and first-class mail is both routine and reasonably calculated to accomplish the broad remedial goals of the notice provision of the FLSA."); *Page*, 2013 WL 4782749, at *7 (approving 90 day notice period); *Martinez v. Refinery Terminal Fire Co.*, No. 2:11-cv-295, ECF No. 54 (S.D. Tex. Jan. 25, 2012) (Ex. O) (approving mailing and emailing of notices, and allowing counsel to call potential class members if other methods of contact fail).

Motion and: 1) conditionally certify this action for purposes of notice and discovery; 2) order that judicially-approved notice be sent to all Collective Members; 3) approve the form and content of Plaintiff's proposed judicial notice and reminder notice; 4) order STS to produce to Plaintiff's Counsel the contact information (including the name, address, email address, telephone number, dates of employment, and last four digits of the social security number) for each Collective Member in a usable electronic format; 5) authorize notice to be sent via First Class Mail and e-mail to the Collective Members pursuant to Plaintiff's proposed notice plan; and 6) require that STS post a copy of the notice in appropriate, conspicuous, visible and accessible places at each of its offices, shops, trailers, or other locations in which Collective Members currently work during the 90-day opt-in period.

Dated: October 24, 2016

Respectfully submitted,

/s Sarah R. Schalman-Bergen
Shanon J. Carson
Sarah R. Schalman-Bergen
Alexandra K. Piazza
Camille Fundora
BERGER & MONTAGUE, P.C.
1622 Locust Street
Philadelphia, PA 19103
Telephone: (215) 875-3000
Facsimile: (215) 875-4604
scarson@bm.net
sschalman-bergen@bm.net
apiazza@bm.net
cfundora@bm.net

Clif Alexander
ANDERSON2X, PLLC
819 N. Upper Broadway
Corpus Christi, Texas 78401
Telephone: (361) 452-1279
Facsimile: (361) 452-1284
clif@a2xlaw.com

*Attorneys-In-Charge for Plaintiff*

23

## <u>CERTIFICATE OF CONFERENCE</u>

I certify that on August 24, 2016 and August 30, 2016, counsel for Plaintiff discussed Plaintiff's intent to file this Motion with counsel for Defendant.  Defendant indicated that it intends to oppose this Motion.

/s/ *Sarah R. Schalman-Bergen*
Sarah R. Schalman-Bergen

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that the foregoing document was served by ECF on all known parties on this 24th day of October, 2016.

/s/ *Sarah R. Schalman-Bergen*
Sarah R. Schalman-Bergen