UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
TYLER DIVISION

| | | |
|---|---|---|
| JEREMY LOPEZ, individually and on behalf of all persons similarly situated, | : : : | Civil Action No.: 6:16-cv-246-RWS-JDL |
| Plaintiff, | : : | Collective Action Pursuant to 29 U.S.C. § 216(b) |
| v. | : : | |
| STS CONSULTING SERVICES, LLC, | : : | |
| Defendant. | : | |

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S
<u>AMENDED MOTION TO COMPEL ARBITRATION</u>**

I. **INTRODUCTION**

Plaintiff Jeremy Lopez ("Plaintiff"), individually and on behalf of all persons similarly situated, files his Opposition to Defendant STS Consulting Services, LLC's ("Defendant" or "STS") Amended Motion to Compel Arbitration ("Motion to Compel"), Dkt. No. 101, and states as follows:

Defendant has moved to compel arbitration against three Opt-In Plaintiffs who did not sign its Arbitration Agreement, which it rolled out after this nationwide collective action was filed and after the United States Department of Labor, Wage and Hour Division ("DOL") had spent years investigating the company for Fair Labor Standards Act ("FLSA") violations. (*See* Def.'s Amended Mot. to Compel Arb., Dkt. No. 101); Ex. 1 ("Arbitration Agreement"), Dkt No. 101-1). The Arbitration Agreement contains a collective and class action waiver; does not identify this case; does not explain that by signing the Agreement, the individuals will have their rights under the FLSA and the National Labor Relations Act both substantively and procedurally modified; and allows Defendant to modify its elusive Complaint Process. The Arbitration Agreement has a signature line. The three opt in plaintiffs did not sign it. Two did not sign because they did not want to be bound by the agreement. The third does not even remember receiving it. While Plaintiff has agreed that the individuals who signed this agreement will proceed with arbitration, there is no basis to enforce this unconscionable Arbitration Agreement against individuals who never signed the Agreement and did not consent to be bound by it.

A contract is a legally binding agreement between the parties to do or not to do something. There are three basic elements that must be present for a contract to exist: offer, acceptance, and consideration. For there to be an agreement to arbitrate, the Federal Arbitration Act ("FAA"), 9 U.S.C. § 2, requires the agreement to be in writing. "[A]rbitration is a matter of consent, not coercion." *Volt Info. Sci., Inc. v. Bd. of Tr. of Leland Stanford Junior Univ.*, 489 U.S. 468, 469 (1989). A contract

1

cannot reduce or waive one's FLSA rights. Congress enacted the FLSA "to protect workers from substandard wages and oppressive working conditions." *Barrentine v. Arkansas-Best Freight Sys., Inc.*, 450 U.S. 728, 740 (1981).

## II. **PROCEDURAL HISTORY**

Plaintiff filed his Complaint in the United States District Court for the District of Wyoming on February 19, 2016, alleging that STS violated the FLSA by paying Plaintiff and other employees on an unlawful day rate compensation plan without paying overtime when they worked over forty hours per week. *See* Compl. ¶¶ 12-32; 29 C.F.R. § 778.112 (day rate regulation of the FLSA). On March 15, 2016, STS filed a Motion to Dismiss for Lack of Personal Jurisdiction and Improper Venue, and Alternative Motion to Transfer Venue. (ECF No. 14.) The Parties subsequently agreed to transfer the action this Court. (ECF No. 17.) STS filed its Answer on April 11, 2016. (ECF No. 21.) Soon thereafter, Defendant rolled out its Arbitration Agreement upon all current employees, including Opt-In Plaintiffs Gene Mann, Neal, and James Sheldon. Defendant states, "Since Jeremy Lopez worked for STS, it has changed its policies." Sinclair Decl. ¶ 3, Dkt. No. 101-3.

Between 2015 and 2016, the DOL investigated STS's pay practices. The DOL concluded its audit in March 2016, as a result of which Defendant was required to pay back wages to numerous inspectors, including 4 current Opt-In Plaintiffs. Rather Defendant changed its policies as a response to this lawsuit and the DOL investigation.

On January 20, 2017, the Court adopted the Report and Recommendation of the United States Magistrate Judge conditionally certifying this lawsuit pursuant to 29 U.S.C. § 216(b) on behalf of:

> All current and former employees of STS Consulting Services, LLC ("STS") who performed field work within the inspection sector of STS in the United States, and

2

who were paid in whole or in part, on a "day rate basis" in any workweek between three years prior to the date of the Court's Order and the present (the "FLSA Collective"). (ECF No. 64.)

On March 17, 2017, through a notice administrator, Plaintiff distributed the court-authorized notice to potential Opt-In Plaintiffs. The notice period ended on May 16, 2017, and a total of 75 Opt-In Plaintiffs had filed their opt-in consent forms in addition to Plaintiff, including Gene Mann, Jerry Neal, and James Sheldon. (Dkt. Nos. 72, 75.) Mann's and Neal's consent forms were filed on April 10, 2017, and Sheldon's was filed on April 21, 2017.

On July 26, 2017, the Parties and their respective attorneys began the mediation process with an in-person mediation session in Dallas, Texas with mediator Guy N. Harrison. The Parties worked all day, and although the parties were not able to reach a resolution at the mediation. The claims for fifteen (15) Opt-In Plaintiffs are stayed pending arbitration based on their signed Arbitration Policies, and eleven (11) Opt-In Plaintiffs' claims were dismissed based on the statute of limitations. (Dkt. Nos. 98, 99.) There are a total of fifty (50) Opt-In Plaintiffs, including Plaintiff, whose claims were neither dismissed nor stayed.

### III.  FACTS RELEVENT TO THIS MOTION

#### A.  Opt-In Plaintiffs Mann, Neal and Sheldon

Defendant did not provide its Arbitration Agreement to Plaintiff until June 16, 2017 when Defendant provided its Arbitration Agreement and signature pages of the Arbitration Agreement for 12 Opt-In Plaintiffs at that time. Defendant disclosed the Arbitration Agreement to Plaintiff more than fourteen (14) months after Defendant filed its Answer to the Complaint, Dkt. No. 21, about three (3) months after notice was disseminated, and about two (2) months since Mann, Neal, and Sheldon filed their consent forms.

Opt-in Plaintiff Sheldon began working for Defendant around January 2014 in Texas as a

3

Utility Inspector. Ex. A, Declaration of James Sheldon ("Sheldon Decl.") at ¶ 3. According to Defendant, Sheldon received the Arbitration Agreement in April 2016. *See* Def.'s Amended Mot. to Compel Arb., Ex. 2 (Dkt. No. 101-2). Sheldon does not remember receiving, reviewing, or signing the Arbitration Agreement. Defendant has no records of Sheldon's signature, or any emails acknowledging receipt of the Arbitration Agreement. Sheldon Decl. at ¶ 4. Sheldon stopped working for Defendant in May 2016. *Id.* at ¶ 3.

Opt-In Plaintiff Mann began working for Defendant around April 2016 in Ohio as an Electrical Inspector. Ex. B, Declaration of Gene Mann ("Mann Decl.") at ¶ 3. After he started working for Defendant in April 2016, he received an Arbitration Agreement. *Id.* at ¶ 4. He did not sign the Arbitration Agreement after speaking with his friend and co-worker Neal because he did not want to be bound by the Arbitration Agreement. *Id.* at ¶ 5. In August 2016, he received another email from Defendant with the Arbitration Agreement requesting for a signature. *Id.* at ¶ 6. Again, he did not sign the Arbitration Agreement because he did not want to be bound by the Arbitration Agreement. *Id*. He finished working for Defendant around December 2016. *Id.* at ¶ 3.

Opt-In Plaintiff Neal began working for Defendant around April 2016 in Ohio. Ex. C, Declaration of Jerry Neal ("Neal Decl.") at ¶ 3. After he started working for Defendant in April 2016, he received an Arbitration Agreement. *Id.* at ¶ 4. He did not sign the Arbitration Agreement after speaking with his friend and co-worker Mann because he did not want to be bound by the Arbitration Agreement. *Id.* at ¶ 5. After Neal did not return the Arbitration Agreement with his signature, he received a phone call from Defendant to return the Arbitration Agreement with his signature. *Id.* at ¶ 6. He told the Defendant that he did not want to sign the Arbitration Agreement or be bound by it. *Id.* In August 2016, he received another email from Defendant with the Arbitration Agreement and, again, he did not sign the Arbitration Agreement because he did not

want to be bound by it. *Id.* at ¶ 7.

### B. The Arbitration Agreement

The Arbitration Agreement was circulated to Mann, Neal and Sheldon via email requesting their signatures. *See* Def.'s Amended Mot. to Compel Arb., Exs. 2-3 (Dkt. No. 101-2). Above the Arbitration Agreement's signature line is a section entitled "Acknowledgement of ***and Agreement with*** STS Arbitration Policy." Arbitration Agreement at STS Arbitration 5, Def.'s Amended Mot. to Compel Arb., Ex. 1 (Dkt. No. 101-1) (emphasis added). The section begins, "***My signature on this document*** acknowledges that I understand the above Arbitration Policy ***and agree*** to abide by its conditions." *Id.* (emphasis added).

Defendant's Arbitration Agreement required signature to be bound under the Arbitration Agreement. *Id.* Defendant reinforced that requirement in its initial and reminder emails to employees requesting the signature page of the Arbitration Agreement to be returned to Defendant. Employees' signatures on the Arbitration Agreement is so essential to Defendant that it went as so far as to call employees, including Neal, requesting the Arbitration Agreement to be signed. At no time did Defendant tell the Opt-In Plaintiffs that if they did not sign the Arbitration Agreement they could no longer work for Defendant.

There is no consideration for a contract to be formed by this Arbitration Agreement. Opt-In Plaintiffs were already working for Defendant when they received the Arbitration Agreement to review. At no time were they told that they would be terminated should they not agree with the Arbitration Agreement. In fact, Mann and Neal worked for Defendant between April 2016 and December 2016. They received the Arbitration Agreement from Defendant after they started working in April 2016 and again in August 2016.

Moreover, the Arbitration Agreement also contains provisions which are unconscionable,

5

illusory, and illegal, thereby unenforceable. The Court should deny Defendant's motion for each of the following reasons:

1. The Arbitration Agreement is unconscionable because it limits Opt-In Plaintiffs' substantive rights to pursue their overtime claim for the FLSA's statutory period by imposing a contractual one (1) year limitations period, thereby rendering the agreement invalid;

2. The Arbitration Agreement is unconscionable because it contains a class action waiver;

3. The Arbitration Agreement is unconscionable because it requires current employees to obtain permission to file an arbitration no less than 120 days from Defendant's mandatory complaint process; and

4. The Arbitration Agreement is illusory because it provides Defendant the right to unilaterally terminate or modify provisions in the Arbitration Agreement.

Forcing Opt-In Plaintiffs Mann, Neal and Sheldon into a contract they purposely did not sign and did not provide consideration goes against the FAA's requirement to adhere to basic contract law forming a contract without acceptance, and also against the FLSA's remedial and humanitarian purpose to protect workers – "those who sacrifice a full measure of their freedom and talents to the use and profit of others." *Tennessee Coal, Iron & R. Co. v. Muscoda Local No. 123*, 321 U.S. 590, 597 (1944), *superseded by statute on other grounds by* Portal-to-Portal Act of 1947, 29 U.S.C. §§ 251-62. Absent an acceptance to an agreement and consideration, a court cannot create a contract between two parties to arbitrate their FLSA disputes. In this matter, there is no valid arbitration agreement. Defendant, drafter of the Arbitration Agreement, required a signature as acceptance and the Opt-In Plaintiffs did not accept the Arbitration Agreement. Even if the Court should find an agreement was made, the Court should find the agreement unenforceable based upon the Arbitration Agreement's unconscionable, illusory, and illegal terms.

## IV. ARGUMENT

Under the FAA, a "written provision in any . . . contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction

6

. . . shall be valid, irrevocable, and enforceable, save upon such grounds as exits at law or in equity for the revocation of any contract." 9 U.S.C. § 2. There is a two-step inquiry to determine whether a party is compelled to arbitrate: (1) whether the parties agreed to arbitrate the dispute and, if so, (2) whether any federal statute or policy renders the claims non-artbitrable. *JP Morgan Chase & Co. v. Conegie ex rel Lee*, 492 F.3d 596, 568 (5th Cir. 2007). In the first step of the analysis, there are two considerations: (1) whether there is a valid agreement to arbitrate between the parties and (2) whether the dispute in question falls within the scope of that arbitration agreement. *Id.*

The issue at hand is whether there is an agreement to arbitrate. Disputes over the arbitration agreement's validity are analyzed under state law principles of contract construction – here Texas. *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995).

In this case, there is no need to address the second consideration as there is no valid agreement to arbitrate. The FAA may favor arbitration, however, the "federal policy favoring arbitration does not apply to the determination of whether there is a valid agreement to arbitrate between the parties." *Morrison v. Amway Corp.*, 517 F.3d 248, 254 (5th Cir. 2008).

It is a "fundamental principle that arbitration is a matter of contract." *AT & T Mobility LLC v. Concepcion*, 563 U.S. 333, 333 (2011) (quoting *Rent–A–Center, West, Inc. v. Jackson*, 561 U.S. 63, 67 (2010)). That is, "[a]rbitration is strictly 'a matter of **consent**.'" *Granite Rock Co. Int'l Broth. Of Teamsters*, 561 U.S 287, 299 (2010) (quoting *Volt Info.*, 489 U.S. at 479) (emphasis added).

Courts apply ordinary state law principles that govern contract formation. *Morrison*, 517 F.3d at 254. Under Texas law, a valid contract requires an offer, acceptance, mutual assent, execution and delivery of the contract with the intent that it be mutual and binding, and consideration. *LM Ins. Corp. v. Nat'l Interstate Ins. Co.*, No. 3:12-CV-1225-B, 2012 WL

7

12937134, at *2 (N.D. Tex. Oct. 31, 2012); *Zamora v. Swift Transp. Corp.*, No. EP-07-CA-00400-KC, 2008 WL 2369769, at *4 (W.D. Tex. June 3, 2008) ("Under Texas law, the validity of a contract is dependent upon consideration or mutuality of obligation.")*Buxani v. Nussbaum*, 940 S.W.2d 350, 352 (Tex. App. - San Antonio 1997); *McCulley Fine Arts Gallery, Inc. v. "X" Partners*, 860 S.W.2d 473, 477 (Tex. App. - El Paso 1993). "An employer asserting an arbitration agreement must prove both notice of the agreement and acceptance by the employee." *Moran v. Ceiling Fans Direct, Inc.*, No. CIVA H-06-0813, 2006 WL 2478837, at *3 (S.D. Tex. Aug. 25, 2006), *aff'd*, 239 F. App'x 931 (5th Cir. 2007) (citing *In re Halliburton Co.*, 80 S.W.3d 566, 568 (Tex. 2002)).

### A.  A Contract Was Not Formed Because It Lacked Acceptance

Arbitration agreements are like other contracts where there must be acceptance in order for a valid contract between the parties may exist.  "The FAA 'does not require parties to arbitrate when they have not agreed to do so,' and its purpose is to make arbitration agreements 'as enforceable as other contracts, but not more so.'" *Rocha v. Macy's Retail Holdings, Inc.* No. EP-17-CV-73-PRM, 2017 WL 4399575, at *2 (W.D. Tex. Oct. 3, 2017) (quoting *Weekley Homes, L.P. v. Rao*, 336 S.W.3d 413, 419 (Tex. App. – Dallas 2011); *see also May v. Higbee Co.*, 372 F.3d 757, 763 (5th Cir. 2004) ("arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit.")

Opt-In Plaintiffs did not sign the Arbitration Agreement and "[u]nder standard contract principles, the presence or absence of a party's signature on a written contract is relevant to determining whether there was an intent for an agreement to be binding." *Rocha*, 2017 WL 4399575 at *3 (quoting *Firstlight Fed. Credit Union v. Loya*, 478 S.W.3d 157, 167 (Tex. App.-El Paso 2015)).  When there is no signed contract, as here, it is defendant's burden to prove the party

8

"unconditionally and mutually assented." *Id.* (quoting *Lujan v. Alorica*, 445 S.W.3d 443, 448-49 (Tex. App.-El Paso 2014). In the present case, Defendant has failed to provide evidence Mann, Neal and Sheldon "unconditionally and mutually assented" to the Arbitration Agreement.

The case *Moran* is instructive. In *Moran*, the employer's written notice to regarding acceptance by continued employment was contradicted by employer's instructions and actions and by the employees' statements. 2006 WL 2478837 at *4. The Court found there was no contract to arbitrate as the employees did not accept the policy, even after continuing to work for the employer. The employees verbally stated that they did not want to sign and did not agree to the policy and after the lawsuit was filed, the employer attempted to dissuade litigation but did not include arbitration as a reason. *Id.*

The *Moran* case distinguishes itself from the *Halliburton* matter where the Texas Supreme Court noted that it was not "a case in which the written notice was contradicted by other written or oral communications between the employer and the employee." *Moran*, 2006 WL 2478837 at *4 (quoting *Halliburton*, 80 S.W.3d at 569). In *Halliburton*, the arbitration policy stated, "if you accept or continue your employment after January 1, 1998, you will agree to resolve all legal claims against Halliburton through this process instead of through the court system." *Halliburton*, 80 S.W.3d at 569. To the Court, the employer clearly provided the method of acceptance to the policy – acceptance or continued employment beginning a certain date – and the employee continuing to work after that certain date was acceptance.

Like *Moran*, the circumstances present in this matter, depicts such a case where Defendant's Arbitration Agreement and emails conflict with the employees' communications and intent with Defendant. The unequivocal method to accept Defendant's Arbitration Agreement was by signature. Defendant insisted in writing and verbally that employees sign the Arbitration

9

Agreement. Mann, Neal and Sheldon did not sign the Arbitration Agreement, therefore, did not assent.

Defendant argues that the three Opt-In Plaintiffs are bound to the Arbitration Agreement because they continued to work for Defendant after receiving notice of the new Arbitration Agreement. *See* Def.'s Amended Mot. to Compel Arb. at 6. Defendant cites to *Halliburton* as an example strengthening its argument a valid contract was formed. *See Id.* at 6-7. However, as discussed above, that argument fails when employees refuse to sign the Arbitration Agreement because they do not agree to it and when an employer insists on the employee's signature, which Defendant did so in this case.

Texas law does recognize employee's acceptance of an arbitration policy through the continuance to work for the employer. *Vallejo v. Garda CL SW, Inc.*, 948 F. Supp. 2d 720, 728 (S.D. Tex. 2013). That form of acceptance fails, however, when an employee unequivocally states he does not agree to the agreement. In *Vallejo*, the Court held that the employees did not consent to arbitration even after continuing to work for defendant after the arbitration policy was implemented as the employees verbally declined and refused to sign the policy. *Id.* at 728-29.

In this matter, the Arbitration Agreement requires a signature to be bound by the Arbitration Agreement. *See* Arbitration Agreement at STS Arbitration 5 ("***My signature on this document*** acknowledges that I understand the above Arbitration Policy and ***agree to abide*** by its conditions.") (emphasis added). Defendant emailed Mann, Neal and Sheldon requesting their signatures on the Arbitration Agreement. Defendant went even further in calling Neal for his signature to the Arbitration Agreement and emailing Neal and Mann for their signature again time months after the initial arbitration email. Neal verbally stated to Defendant he did not agree to the Arbitration Agreement and did not want to sign it. There is no mutual meeting of the minds in this

case, therefore, no acceptance and no contract. *See also Lona v. Performance Technologies, LLC*, No. 5:15-cv-279 RP, 2015 WL 5125848, at *3-4 (W.D. Tex. Sept. 1, 2015) (Court held there was enough evidence to establish a fact issue regarding whether the plaintiff accepted the arbitration policy).

### B. The Arbitration Agreement Is Unenforceable Because It Is Unconscionable

Under Texas law, an unconscionable contract is unenforceable. *In re Olshan Found. Repair Co., LLC*, 328 S.W.3d 883, 892 (Tex. 2010). Unconscionability includes two aspects – procedural and substantive. *Carter v. Countrywide Credit Indus., Inc.*, 362 F.3d 294, 301 (5th Cir. 2004). Procedural unconscionability "refers to the circumstances surrounding the adoption of the arbitration provision." *Id.* Substantive unconscionability "refers to the fairness of the arbitration provision itself." *Id.* Here, the Arbitration Agreement is substantively unconscionable.

The Arbitration Agreement is unconscionable as it reduces the three-year statute of limitations on FLSA claims to a one-year statute of limitations. FLSA rights cannot be waived under ***any*** circumstances. *See Barrentine*, 450 U.S. at 740 ("[The Supreme] Court's decisions interpreting the FLSA have frequently emphasized the nonwaivable nature of an individual employee's right to a minimum wage and to overtime pay under the Act. Thus, we have held that FLSA rights cannot be abridged by contract or otherwise waived because this would 'nullify the purposes' of the statute and thwart the legislative policies it was designed to effectuate."). The FLSA is "remedial and humanitarian in purpose . . . [and] should not be interpreted or applied in a narrow, grudging manner." *Tennessee Coal*, 321 U.S. at 597. Moreover, "[a]n arbitration agreement covering statutory claims is valid ***so long as*** the arbitration agreement does not waive substantive rights and remedies of the statute and the arbitration procedures are fair so that the employee may effectively vindicate his stator rights." *In re Poly-America, L.P.*, 262 S.W.3d 337,

11

352 (Tex. 2008) (internal quotation omitted).

The Arbitration Agreement in this case states that the employee is to submit to binding arbitration "within one (1) year from the date the first dispute arose [and] that arbitration shall be the exclusive forum for resolving all disputes arising out of or involving [the] employment with STS. . ." Arbitration Agreement at STS Arbitration 5. This provision effectively reduces the two or three year statute of limitations under the FLSA to one year.

An arbitration cost is unenforceable when it imposes substantial costs on one of the parties to the agreement. *See Green Tree Fin Corp. v. Randolph*, 531 U.S. 79, 91 (2000). Specifically, the Supreme Court recognized in *Green Tree* that "the existence of large arbitration costs could preclude a litigant . . . from vindicating federal statutory rights." *Id.*

In this matter, the Arbitration Agreement dictates that the arbitration proceeding will be handled through the American Arbitration Association ("AAA"). Under the AAA rules, absent a statement in the arbitration policy regarding who pays for fees upfront, both parties are required to pay the arbiter's fees and related costs equally. The Arbitration Agreement specifically states, "I further understand that I will be responsible for half of the cost of the arbitrator and any incidental costs of arbitration." Arbitration Agreement at STS Arbitration 5. Such an agreement is unconscionable because it imposes a substantial economic burden on the Opt-In Plaintiffs relative to Defendant.

Under the FLSA, there is a fee-shifting provision where a successful plaintiff has the statutory right to receive all attorneys' fees and court costs from the employer. *See* 29 U.S.C. § 216(b). This Arbitration Agreement the Defendant wishes to enforce strips the Opt-In Plaintiffs of their substantive rights by requiring them to pay the substantial costs of arbitration, despite having meritorious claims. Here, arbitration costs would be massive. Arbitrators now cost several

thousand dollars a day, if not more. This case on an individual basis could go on for days with pre-trial rulings by the arbitrator, the arbitration days of hearing itself, and the days it takes to write a decision.

The Arbitration Agreement also requires the Opt-In Plaintiffs to be economically responsible for their own legal representation during arbitration. This provision undermines the FLSA allowing the successful plaintiff to recover attorneys' fees and costs. *See* 29 U.S.C. § 216(b). "Attorneys' fees are mandatory in FLSA actions for plaintiffs who prevail on their claims for unpaid minimum wage or overtime compensation." *Coronado v. D.N. W. Houston, Inc.*, No. H-13-2179, 2015 WL 5781375, at *9 (S.D. Tex. Sept. 30, 2015). It is clear that fee-shifting provisions in arbitration agreements prevent employees from vindicating their FLSA claims.[1]

Additionally, the Arbitration Agreement is unconscionable because it contains a class action waiver. Currently there is a Circuit Court split regarding the enforceability of class action waivers in employment contracts, including arbitration provisions.[2] While the Fifth Circuit has

---

[1] *See Sanchez v. Nitro–Lift Techs., LLC*, 762 F.3d 1139, 1148 (10th Cir. 2014) (fee-shifting provisions would be invalid under prevailing Tenth Circuit and Supreme Court law); *Quilloin v. Tenet HealthSystem Phila., Inc.*, 673 F.3d 221, 230-31 (3d Cir. 2012) ("Provisions requiring parties to be responsible for their own expenses, including attorneys' fees, are generally unconscionable because restrictions on attorneys' fees conflict with federal statutes providing fee-shifting as a remedy."); *Nino v. Jewelry Exchange, Inc.*, 609 F.3d 191, 203 (3d Cir.2010) (arbitration agreement's "restriction on the arbitrator's ability to award attorney's fees, costs, and expenses [to the plaintiffs was] substantively unconscionable" because it "undermine[d] the legislative intent behind fee-shifting statutes like Title VII"); *Morrison v. Circuit City Stores, Inc.*, 317 F.3d 646, 669 (6th Cir. 2003) (en banc) (district court erred in "holding that the cost-splitting provision in the ... arbitration agreement was enforceable"); *Silva v. Miller*, 307 F. App'x 349, 351 (11th Cir. 2009) (the FLSA "provides for reasonable attorney's fees [and] the parties cannot contract in derogation of FLSA's provisions"); *Nesbitt v. FCNH, Inc.*, 74 F.Supp.3d 1366, 1374–75 (D.Colo.2014) (finding similar fee-shifting provision unenforceable).

[2] *See N.L.R.B. v. Alternative Entm't, Inc.*, 858 F.3d 393 (6th Cir. 2017) (class action waivers in employment-related arbitration agreements violate the National Labor Relations Act (NLRA) and thus are unenforceable); *Morris v. Ernst & Young LLP*, 834 F.3d 975 (9th Cir. 2016) (holding that

13

taken a position, the legality and enforceability of an arbitration agreement that contains a prohibition on class and collective actions is currently pending before the Supreme Court. The Supreme Court's decision will have a significant impact on employment-related class and collective actions.

Finally, Defendant included a provision in the Arbitration Agreement where employee must obtain permission from Defendant to move forward to arbitration after completing its undefined "Complaint Process". *See* Arbitration Agreement at STS Arbitration 4. Just as limiting the statute of limitations to one year is unconscionable, this provision cannot be enforced as it greatly further reduces an employee's remedies provided by the FLSA. "An arbitration agreement covering statutory claims is valid so long as the arbitration agreement does not waive the substantive rights and remedies the statute affords and the arbitration procedures are fair, such that the employee may effectively vindicate his statutory rights." *In re Poly-Am*, 262 S.W.3d at 349 (internal quotations omitted).

The Arbitration Agreement provides the employee cannot obtain permission to proceed to arbitration less than 120 days from the Defendant's mandatory Complaint Process. Furthermore, Defendant does not specify a time period before which Defendant must provide the permission to arbitrate after the employee makes such a request.

### C. The Arbitration Agreement Is Unenforceable Because It Lacks Consideration And Is Illusory

A contract was not formed as it lacks consideration. Texas law requires consideration for

---

an arbitration agreement that contains a prohibition on collective actions violates Section 7 of the NLRA, is illegal, and therefore unenforceable under Section 4 of the FAA); *Lewis v. Epic Systems Corp.*, 823 F.3d 1147 (7th Cir. 2016) (same); *with Murphy Oil USA, Inc. v. N.L.R.B.*, 808 F.3d 1013 (5th Cir. 2015) (mandatory class action waivers are enforceable in employment disputes); *Owen v. Bristol Care, Inc.*, 702 F.3d 1050 (8th Cir. 2013) (same) ; *Sutherland v. Ernst & Young LLP*, 726 F.3d 290 (2d Cir. 2013) (same).

an agreement to arbitrate. *Medivil v. Zanios Foods, Inc.*, 357 S.W.3d 827, 831 (Tex. App. – El Paso 2012). An agreement is illusory "[w]here one party has the unrestrained unilateral authority to terminate its obligation to arbitrate." *Lizalde v. Vista Quality Mkts.*, 746 F.3d 222 (5th Cir. 2014). The Arbitration Agreement requires employees to proceed with any employment disputes through Defendant's Complaint Process and then arbitration, when finally permitted. However, Defendant is not obligated to undergo the same protocol mandated from employees. *See* Arbitration Agreement at STS Arbitration 4 ("STS is not required to pursue arbitration before initiating or implementing any employment or disciplinary action against an employee.")

Additionally, the Complaint Process is undefined and completely at the whim of Defendant. *See id.* Without a concrete Complaint Process protocol, those employees who undergo the Complaint Process do so blindly. Further, the Arbitration Agreement is silent as to the Defendant's modification of the Complaint Process, leaving Defendant to modify the Complaint Process at any time with no notice, making the Arbitration Agreement illusory and unenforceable. *See Zamora*, 2008 WL 2369769 at *4 ("When illusory promises are all that support a purported bilateral contract, there is no mutuality of obligation and, this, there is no contract . . . The Fifth Circuit and the Texas Supreme Court have both held that if the defendant-employer retains the right to 'unilaterally abolish or modify' the arbitration program, then the agreement to arbitrate is illusory and not binding upon the plaintiff-employee.")

### V. **CONCLUSION**

For the foregoing reasons, Plaintiff respectfully requests that the Court deny Defendant's Amended Motion to Compel Arbitration.

Dated: November 2, 2017                          Respectfully submitted,

BERGER & MONTAGUE, P.C.

/s Sarah R. Schalman-Bergen
Shanon J. Carson
Sarah R. Schalman-Bergen
Camille Fundora
BERGER & MONTAGUE, P.C.
1622 Locust Street
Philadelphia, PA 19103
Telephone: (215) 875-3000
Facsimile: (215) 875-4604
scarson@bm.net
sschalman-bergen@bm.net
cfundora@bm.net

Clif Alexander
Lauren Elizabeth Braddy
ANDERSON2X, PLLC
819 N. Upper Broadway
Corpus Christi, Texas 78401
Telephone: (361) 452-1279
Facsimile: (361) 452-1284
clif@a2xlaw.com
lauren@a2xlaw.com

William S. Hommel, Jr.
Hommel Law Firm
1404 Rice Road, Suite 200
Tyler, TX 75703
Telephone: (903) 596-7100
Facsimile: (469) 533-1618
bhommel@hommelfirm.com

*Attorneys for Plaintiff and the Collective*

## **CERTIFICATE OF SERVICE**

      I hereby certify that the foregoing document was served by ECF on all known parties on this 2nd day of November, 2017.

                                                   /s/ *Sarah R. Schalman-Bergen*
                                                    Sarah R. Schalman-Bergen